UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 0:22-CV-00042-KKC-EBA

BRITNEY ALLEN JONES,                                                                                    PLAINTIFF,

V.                                     **MEMORANDUM OPINION & ORDER**

WELLPATH, LLC, *et al.*,                                                                              DEFENDANTS.

*** *** *** ***

This action involves the death of Chad Raymond which occurred while he was incarcerated at the Eastern Kentucky Correctional Complex (EKCC) on May 9, 2021. [R. 1]. Plaintiff Brittany Allen Jones, Mr. Raymond's sister and administrator of his estate, filed a complaint on May 31, 2022, alleging that Defendants Wellpath Inc., Betty Noble, Jennifer Blanton, Leland Sexton, Christopher Stevens, and Lacy Russell were negligent, grossly negligent, and deliberately indifferent to Mr. Raymond's medical needs. [R. 1]. Jones alleges that Raymond exhibited the signs and symptoms of "potentially fatal endocarditis for at least a month before he was taken to a hospital." [R. 59 at pg. 1]. This action is before the Court following a status conference held on March 1, 2024, to discuss the appropriate next steps and possible relief for Wellpath's late disclosure of a critical document. For the following reasons, the Court will extend the discovery deadline and award attorneys' costs and fees to Ms. Jones as set forth below.

**Facts and Background**

On November 19, 2022, Jones sent Defendants her First Set of Interrogatories and Requests for Production of Documents. [R. 59-1]. Specifically, in Jones' First Set of Requests, Interrogatory No. 4 asks Wellpath to "[s]pecify all tests, examinations, and/or medications administered to Mr.

Raymond during the events made the basis of Plaintiff's Complaint, by whom such tests, examinations, and/or medications were administered, and the results of such tests, examinations, and/or medications." [R. 64-2 at pg. 9]. Wellpath responded to the request four months later on March 17, 2023. [R. 64-2]. Wellpath used boilerplate language to broadly object to nearly all of the interrogatories and requests for production. [*Id.*]. Wellpath repeatedly stated, without support, that Jones' requests were overly broad, irrelevant, burdensome, confidential, and/or the requested information was not in its possession. [*Id.*]. Particularly, in response to Interrogatory No. 4, Wellpath objected stating that the request was too broad, unduly burdensome, and the records were in the possession of Kentucky Department of Corrections, not Wellpath. [R. 64-2 at pg. 9].

On June 16, 2023, Jones served Wellpath her Second Set of Discovery Requests for "all emails, texts, or documents evidencing communications among or between Defendants concerning Chad Raymond." [R. 64-9]. On August 30, 2023, Jones disclosed her experts, pursuant to Fed. R. Civ. P. 26. [R. 43].

Sometime between June 16, 2023, and October 25, 2023, Jones served Wellpath her Third Set of Discovery Requests for documents indicating the income and profitability of Wellpath's operations. [R. 64-8]. Wellpath broadly objected with boilerplate language to state that the request was unduly burdensome, broad, vague, ambiguous, and the documents requested are not in its control. [*Id.*]. On October 17, 2023, Jones served Wellpath her Fourth Set of Discovery Requests for the name of the "provider nurse" discussed during a recent deposition and any "after-death" and/or mortality/morbidity forms or reports concerning Mr. Raymond or any of the events at issue in this litigation. [R. 64-10]. Wellpath did not respond to Jones' Fourth Request. [R. 64 at pg. 2]. On October 23, 2023, the Court granted the defendants' unopposed motion extending the deadline

to file initial expert disclosures from November 1, 2023, to December 1, 2023. [R. 49]. December 1, 2023, was the discovery deadline in this action. [R. 38].

Then, on November 16, 2023, two weeks before the discovery deadline, Wellpath filed a motion for a hearing. [R. 53]. In its motion, counsel for Defendants claimed that Wellpath found new records that had yet to be produced and requested a conference with the court to discuss the documents and keeping the case on track for trial. [R. 53 at pg. 2]. Defense counsel asserted that on November 16, 2023, during a meeting with her client, Wellpath, she was informed that "additional records had just been located that were stored separately from the records the undersigned previously produced." [R. 53 at pg. 2]. Defense counsel stated that the defendants were "more than willing to allow [Jones] to take additional depositions and supplement her disclosures" because they were "aware of the implications of producing pertinent records after the close of discovery, after depositions have been conducted, and after [Jones] has disclosed her expert." [*Id.*]. Wellpath simultaneously produced 135 documents to Jones. [*Id.*; R. 55].

In response, Jones stated that she did not know the "volume, nature, or relevance" of the 135 newly produced documents or their impact on the scope of the case. [R. 55]. Jones asked the Court to order Wellpath to identify the specific documents that necessitated the supplemental production. [*Id.*]. On November 22, 2023, the court ordered Wellpath to produce to Jones, and the court, an identification of the specific documents that necessitated Wellpath's supplemental production. [R. 56]. On November 28, 2023, Wellpath filed a notice with the court stating that, of the 135 documents produced, there was only *one* new document, which was titled "doppler echocardiogram." [R. 57].

The "doppler echocardiogram" report at issue shows the following information. The X-Ray was ordered on March 30, 2021, by ordering provider Betty Noble, at EKCC. [R. 59-6]. The

Type of Encounter was a "nurse- sick call" and the staff name listed is Barbara Turner. [*Id.*]. The diagnosis code states, "chronic viral hepatitis C" and the X-Ray ordered was a "doppler echocardiogram continu." [*Id.*]. The X-Ray Taken Date was March 30, 2021, at EKCC, at 9:28:05 A.M. [*Id.*]. The X-Ray Results were processed on April 1, 2021, at 6:30 A.M., and signed on the same day at 6:17:24 A.M. by George N. Welch, M.D. [*Id.*]. Among other things, George N. Welch, M.D. states, "LV function is normal and therefore no evidence of a cardiac etiology for the ascites." [*Id.*].

On December 1, 2023, Defendants disclosed their expert, Dr. Thomas Fowlkes, and his 53-page expert report. [R. 58]. In his report, Dr. Fowlkes uses the newly found echocardiogram report and its results to support his opinion. [*Id.*]. On December 2, 2023, Jones served her Fifth Discovery Request to Wellpath requesting information about George N. Welch, M.D., and any contracts, agreements, or other documents by which he was designated to review the results of echocardiograms ordered by Wellpath. [R. 64-11].

On December 9, 2023, Jones filed a Motion for an Order to Show Cause requesting the Court order Wellpath to "demonstrate the authenticity" of the recently produced echocardiogram report and "show cause why it should not be sanctioned for failing to produce such document in this litigation before now." [R. 59 at pg. 9]. In her motion, Jones argued that the echocardiogram report is a critically relevant document that should have been produced months earlier. [R. 59]. According to Jones, the documents produced by Wellpath in this case contained no evidence to indicate that the echocardiogram was ever performed. [R. 59 at pg. 6]. The lack of an echocardiogram, therefore, "became the central thrust" of Jones' case in discovery. [*Id.*].

Jones argues that due to the late production of the critically relevant document, she will be required to re-conduct depositions and conduct discovery on the authenticity of the

echocardiogram report and the information within it. Wellpath states it is willing to allow Jones additional time for discovery and "will follow the Court's ruling regarding the payment for Plaintiff's additional and supplemental expenses incurred based on the production of the [echocardiogram report]." [R. 61 at pg. 2].

On December 19, 2023, the Court ordered Jones to produce to the Court all discovery requests sent to Wellpath and Wellpath's responses to those requests. [R. 63]. On December 22, 2023, Jones produced to the Court her First, Second, Third, Fourth, and Fifth discovery requests, and Wellpath's responses to her First, Third, and Fourth Requests. [R. 64]. On January 12, 2024, the Court ordered Jones to produce an affidavit outlining an itemization of costs, fees and time spent on this action from Jones' initial complaint through November 17, 2023, the date Wellpath notified the court of its supplemental production. [R. 67]. Plaintiffs' Counsel, George Belzley and Christopher Rhoads, submitted their affidavits asserting $31,067.25 and $15,473.75 in costs, fees, and time. [R. 68; 69].

On February 5, 2024, Jones filed a motion to compel Wellpath to produce a response to her Second Discovery Request, initially served on June 16, 2023, requesting all emails, texts, or documents evidencing communications among or between Defendants concerning Chad Raymond. [R. 70 at pg. 2]. On February 26, 2024, Jones filed a second motion to compel Wellpath to respond to her Fifth Discovery Request, initially served on December 2, 2023, requesting identifying information concerning George N. Welch, M.D., who allegedly authored the echocardiogram report at issue. [R. 78]. The Court granted Jones' second motion to compel and ordered Wellpath to respond to Jones' Fifth Discovery Request. [R. 80]. Wellpath produced its answer on February 28, 2024. [R. 84-1]. In its response, Wellpath provided George N. Welch's current address, but had no information regarding his training, experience, and qualifications;

name and address of his employer; place of his employment; title, or the office or position he occupies, with his employer; and location or address at which he allegedly reviewed the echocardiogram results. [*Id.* at pgs. 4-5]. Wellpath additionally states, "Dr. George N. Welch was not an employee of Wellpath, LLC. To this Defendant's knowledge, Dr. Welch was working for a third-party vendor performing diagnostics for [EKCC] in 2021." [*Id.*]. According to Wellpath, any relevant contract would be between Dr. Welch and EKCC, not Wellpath, and therefore, Wellpath does not have access to those records. [*Id.* at pg. 5].

On March 1, 2024, the undersigned conducted a hearing to discuss the parties' proposed next steps in this action. [R. 85]. Jones argued that if the document is allowed and discovery is re-opened, Jones should be awarded costs and fees for time previously spent on discovery. Counsel for Wellpath agreed that if discovery is re-opened, then Jones should be awarded some amount of costs and fees. During the hearing, the parties also discussed Jones' outstanding Second Discovery Request for emails, texts, and other electronic documents that refer to Mr. Raymond. Counsel for Jones requested that the court order Wellpath to respond to its Second Request for Discovery, in particular, emails discussing Mr. Raymond sent and received between March and April of 2021. Counsel for Wellpath did not oppose the request and the parties agreed that Wellpath should respond to Jones' Second Request for Discovery within 14 days of the hearing date. Wellpath filed a response to the Second Request on March 15, 2024. [R. 90].

For the reasons that follow, the undersigned will extend the discovery deadline and award attorneys' fees to Ms. Jones to be paid jointly against Defense Counsel and Wellpath. The fee amount will be calculated beginning from the day that Welllpath should have produced the doppler echocardiogram report, December 19, 2022, until the day it was actually produced, November 17, 2023.

**Legal Standard**

A party must answer an interrogatory and serve any objections within 30 days after being served with interrogatories. Fed. R. Civ. P. 33(b)(2). Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath. Fed. R. Civ. P. 33(b)(3). The grounds for objecting to an interrogatory must be stated with specificity. Fed. R. Civ. P. 33(b)(4). Similarly, a party must respond in writing within 30 days after being served any request for production of documents. Fed. R. Civ. P. 34(b)(2)(A). Any objection to a request for production must state whether any responsive materials are being withheld on the basis of that objection. Fed. R. Civ. P. 34(b)(2)(C).

A party who has made a disclosure under Rule 26(a), or who has responded to an interrogatory, request for production, or request for admission, must supplement or correct its disclosure or response in a timely manner if the party learns that, in some material respect, the disclosure or response is incomplete or incorrect, and has not otherwise been made known to the other parties during the discovery process. Fed. R. Civ. P. 26(e)(1)(A). All fact and expert discovery in this action was to be completed, with requests served in a manner calculated for response compliant with the deadline, by December 1, 2023. [R. 21, 38].

Federal Rule of Civil Procedure Rule 37(c) provides for certain sanctions if a party fails to disclose, supplement an earlier response, or admit in accordance with Rule 26. The Court may order payment of reasonable expenses, including attorney's fees. Fed. R. Civ. P. 37(c)(1)(A). Additionally, on a motion or on its own, the court may order a party, its attorney, or both, to pay the reasonable expenses incurred because of any failure to obey a scheduling order, unless the non-compliance was substantially justified, or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 16(f).

## Analysis

Here, the late disclosure of vital evidence in this case and Wellpath's overall discovery practice raises several serious concerns. Defense Counsel asserts that mere days before the discovery deadline, Wellpath brought the undisclosed doppler echocardiogram report to their attention. Wellpath represents that the echocardiogram report was not produced earlier because it was not part of the decedent's original chart and medical records. However, Wellpath offers little explanation as to why the document was kept separately or why it failed to produce documents from all locations where relevant evidence could have been held. Furthermore, Wellpath produced the crucial document in a set of 135 previously produced documents, and while counsel argues that it was produced in that way to show how the document was found, Wellpath's production appears to hide the vital document in the midst of over 100 other documents. Wellpath's expert witness, Dr. Fowlkes, was able to provide an expert report merely two weeks after Wellpath first produced the echo report in which he uses the echocardiogram results as one basis for his opinion. [R. 57; R. 58]. Dr. Fowlkes report is undated, so it is not clear to the court when Defendants' expert witness had access to the echocardiogram report.

Jones spent the entirety of discovery in this action building a case on the lack of evidence of an echocardiogram having been performed on the decedent. Because of this, Jones must now re-do a large portion of the discovery already completed and engage in new discovery on the echocardiogram report. Wellpath's late disclosure will cause Jones to incur various expenses including, at least, re-conducting defendant depositions and conducting discovery on the authenticity of the echocardiogram report. Because Jones is prejudiced by the late disclosure in this action, the parties agreed that awarding Jones attorneys' fees would be appropriate. Wellpath failed to produce the echocardiogram report in its possession in its response to Jones' first

discovery request and did not disclose the document until two weeks before the discovery deadline. Accordingly, attorneys' fees will be awarded against Wellpath for its failure to find the critical case document and for its late disclosure of that document.

Additionally, attorneys' fees will also be awarded against Defense Counsel for their obstructionist responses to Jones' Requests for Discovery. A party objecting to a discovery request must particularly state the objection grounds; a boilerplate objection has no legal effect. *Davis v. American Highwall Mining, LLC,* 570 F.Supp. 491, 495 (E.D. Ky. Sept. 11, 2020) (citing *Four Fibers, LLC v. Keps Techs.,* 2019 WL 6339814, at *1 (E.D. Mich. Nov. 27, 2019) (collecting cases)). Federal Rule of Civil Procedure 33(b)(4) and Federal Rule 34(b)(2)(B) require that objections to interrogatories and requests for production state with specificity the grounds for objecting to the request. Boilerplate objections "give the impression that the responding party did not take the serving party's discovery requests seriously, and that the responding party had already formulated its replies prior to conducting good faith searches." *Burrell v. Duhon*, 2019 WL 5260481, at *5 n.5 (W.D. Ky. Oct. 17, 2019).

The advisory committee notes to Federal Rule of Civil Procedure 26 contemplate sanctions as a solution to discovery abuses. *Wesley Corp. v. Zoom T.V. Products, LLC,* 2018 WL 372700, at *5 (E.D. Mich. Jan. 11, 2018); Fed. R. Civ. P. 26(g) Advisory Committee's Note to 1983 Amendment ("Thus the premise of Rule 26(g) is that imposing sanctions on attorneys who fail to meet the rule's standards will significantly reduce abuse by imposing disadvantages therefor."). Rule 26(g) requires the attorney or party signing a response or objection to a discovery request to certify that the response is consistent with the Federal Rules, not interposed for any improper purpose, and is not unreasonable nor unduly burdensome or expensive. Fed. R. Civ. P. 26(g)(1)(B). In *Wesley*, where the defendants' objections to plaintiffs' discovery requests were boilerplate

objections, the court awarded attorneys' fees against defendants "in light of the need to deter future use of boilerplate." *Id.*

Here, Wellpath served its answers to Jones' first discovery request over three months late on March 17, 2023, after being served the requests on November 19, 2022. Defense Counsel responded to nearly all of Jones' requests for interrogatories and requests for production with unsupported boilerplate objections. In Jones' first discovery request, Defense Counsel repeatedly objects on the basis of attorney-client privilege, work product doctrine, Patient Safety Work Product privilege, and that the requests were overly broad, not in Wellpath's possession, and/or irrelevant. For example, in response to Interrogatory Number 4 as discussed above, Defense Counsel provided boilerplate objections without any specificity as to how those objections applied. [R. 64-2 at pg. 9]. Counsel stated that the interrogatory was "vague and ambiguous, in that it uses the terms 'all contacts, observations, and tests/examinations' but does not specify who may have generated such documents, rendering the request unanswerable," and further, stated these records were not in the possession of Wellpath. [*Id.*]. However, this request was not vague nor ambiguous, counsel did not assert why attorney-client privilege applies, and the documents were, in fact, in the possession of Wellpath because the echocardiogram report was later produced. Due to Defense Counsel's obstructionist discovery practices, attorneys' fees will also be awarded against Defense Counsel.

### Attorney's Fees

"Generally, an inquiry into the reasonableness of attorneys' fees involves a determination of the suitability of the number of hours expended and an analysis of the propriety of the hourly fee charged." *Bodenhamer Bldg. Corp. v. Architectural Research Corp.*, 989 F.2d 213, 221 (6th Cir. 1993). This calculation results in what is called a fee applicant's "lodestar," which is the

proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). The lodestar is strongly presumed to yield a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

The Sixth Circuit has held that district courts maintain "broad discretion" when determining what constitutes an attorney's reasonable hourly rate. *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013) (quoting *Wayne v. Vill. of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994)). Yet, the district court "must provide a concise but clear explanation of its reasons for the award" by "stat[ing] with some particularity which of the claimed hours the court is rejecting, which it is accepting, and why." *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 366 (6th Cir. 2014) (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997)). "The burden is on the lawyer seeking fees to submit evidence—'in addition to the attorney's own affidavits'—showing that the requested rate is reasonable." Id. (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)). The district court may also rely upon "awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." Waldo, 726 F.3d at 821–22.

Here, because Jones must re-do the discovery already completed that is affected by the production of the echocardiogram report, Jones will be awarded attorney's fees for the work completed from the time that the echocardiogram report should have been produced through the day it was produced. Jones served her First Set of Interrogatories and Requests for Production on November 19, 2022, in which she specifically asked Wellpath to specify all tests, examinations, and/or medications administered to Mr. Raymond during the events of the basis of this complaint. [R. 59-1]. Pursuant to Federal Rule of Civil Procedure 33(b)(2), Wellpath should have responded

or objected to Jones' request within 30 days. Fed. R. Civ. P. 33(b)(2). Accordingly, Wellpath should have produced evidence of the echocardiogram report no later than December 19, 2022. However, Wellpath produced the echocardiogram document on November 17, 2023.

Mr. Gregory Belzley completed 50.2 hours of work on this case between December 19, 2022, and November 17, 2023, and asserts that his reasonable hourly rate is $400. [R. 68]. Mr. Christopher Rhoads completed 7.9 hours of work on this case between the same dates and asserts that his reasonable hourly rate is $350. [R. 69]. In support, each attorney filed a detailed time report and a declaration averring the accuracy of the report. [R. 68, R. 69].

In the Sixth Circuit, "[t]he prevailing market rate is 'that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.'" *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013) (quoting *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)). The Sixth Circuit further utilizes the "community market rule" when calculating a reasonable billing rate. *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 629–30 (6th Cir. 2020) (citing *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995)). A reasonable fee, by the court's logic, will be different from "the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region." *Linneman*, 970 F.3d at 630 (quoting *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 716 (6th Cir. 2016)).

Mr. Belzley argues that his rate of $400 is reasonable based on his experience and the difficulty of this case. Belzley argues that in 2009 his hourly rate exceeded $400 at a large Lexington firm, and now, his work is "every bit as challenging" and should yield a rate of $400 per hour. [R. 68]. Belzley cites to a recent case from the Eastern District of Kentucky where the court awarded an hourly rate of up to $375 in a §1983 case for attorneys with less experience than he. *See Hart v. Thomas,* 2020 WL 708449, at *2 (E.D. Ky. Feb. 10, 2020). Considering the record

and applicable law, including awards in analogous cases and the Court's own knowledge and experience in handling fee requests, Mr. Belzley's hourly rate shall be reduced to $375 for the purposes of calculating the fees to be awarded at this time, and Mr. Rhoads hourly rate of $350 is reasonable.

The lodestar amount should not include any hours that were not "reasonably expended" by attorneys working on the case. *Hensley*, 461 U.S. at 434. ACC argues that some of the attorneys' fees requested by Plaintiff's counsel are unreasonable. [R. 84 at pg. 10]. In determining fee awards, "courts should not 'become green-eyeshade accountants,' but instead must content themselves with 'rough justice.'" *Rembert v. A Plus Home Health Care Agency, LLC,* 986 F.3d 613, 618 (6th Cir. 2021) (citing *Carter v. Hickory Healthcare, Inc.,* 905 F.3d 963, 970 (6th Cir. 2018)). The hours expended by Plaintiffs' counsel in this case between December 19, 2022, and November 17, 2023, are reasonable and non-duplicative, and therefore, are all hours "reasonably expended" by the attorneys working on this case.

**Conclusion**

The Court finds that subject to the reductions listed below, the hourly rates of Jones' attorneys are reasonable, and the hours of work performed by Jones' counsel are reasonable. For the reasons stated above, the Court shall make the following reductions:

- Mr. Belzley's hourly rate shall be reduced to $375.00; and
- Only the time entries between December 19, 2024, through November 17, 2023, shall be considered in determining the attorneys' fees.

Having fully considered the matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** as follows:

1. Ms. Jones shall be awarded **$21,590.00** in attorneys' fees as a remedy for Wellpath's failure to timely disclose vital evidence in this action against Wellpath and Defense Counsel jointly,

2. Jones' Motion to Continue, [R. 91], is GRANTED. The Scheduling Order shall be amended as follows:
    a. By **August 1, 2024**, Plaintiff shall complete discovery and supplement her expert reports.
    b. All dispositive and any *Daubert* motions shall be filed no later than **September 16, 2024**, with response and reply time as per Local Rule 7.1(c)(1) and (2).
    c. This matter is assigned for a Telephonic Pretrial Conference before the trial judge on **February 27, 2025, at 2:00 P.M. to originate from Lexington.** The Court will enter a separate Order with call information prior to the proceeding.
    d. This action is hereby set for TRIAL BY JURY on **March 10, 2025, at 9:00 A.M. in Ashland, Kentucky.** Counsel and parties to appear at 8:30 A.M. The anticipated length of the trial is seven (7) days.

3. Because Wellpath produced its response to Jones' Second Discovery Request, specifically emails in its possession concerning Mr. Raymond, Jones' Motion to Compel, [R. 70], is DENIED AS MOOT.

4. Having considered the information in Wellpath's Motion for a Hearing, [R. 53], and Jones' Motion for Order to Show Cause, [R. 59], and to clarify the record, the parties' motions, [R. 53] and [R. 59], shall be DENIED AS MOOT.

Signed May 13, 2024.

Signed By:
*Edward B. Atkins* EBA
United States Magistrate Judge